IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REGINA B. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 3396 |
| | ) | |
| v. | ) | Maria Valdez, |
| | ) | Magistrate Judge |
| BRIAN BUSH and J. VIDUNA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

In her complaint, Plaintiff, Regina B. Taylor ("Taylor"), seeks damages against two Hazel Crest police officers, Brian Bush ("Bush") and Jeremy Viduna ("Viduna") (collectively "Defendants"), for their alleged violations of state and federal law arising out of a traffic stop. On August 25, 2004 and August 27, 2004, the parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Before the Court is Defendants' motion for summary judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons provided below, Defendants' motion is granted in part and denied in part.

### Background

Unless otherwise noted, the following facts are undisputed or have been deemed admitted pursuant to Local Rule 56.1, which this Court strictly enforces. At all times relevant, Taylor lived and worked in Chicago's south suburbs. (Defs.' L.R. 56.1(a) Stmt. ¶ 2.) As a nurse at Ingalls Hospital, Taylor's work shift began at approximately 10:45 p.m. (Pl.'s L.R. 56.1(b)(3)(B) Stmt. ¶

2.) While traveling to work on the evening of May 13, 2003, Taylor noticed flashing lights in her rearview mirror after passing the intersection of 167th Street and Wood Street in Hazel Crest, Illinois. (Defs.' L.R. 56.1(a) Stmt. ¶¶ 3-4.) Continuing down Wood Street's left lane, Taylor turned on her hazard lights and changed lanes into the right lane. (Pl.'s L.R. 56.1(b)(3)(B) Stmt. ¶ 11.) Believing that the flashing lights signified an emergency vehicle, she also reduced her speed from approximately 30-35 miles per hour to 20 miles per hour. (*Id.* ¶¶ 8, 13.) After doing so, the vehicle, which had followed her into the right lane, turned back into the left lane and pulled up alongside Taylor. (Defs.' L.R. 56.1(a) Stmt. ¶ 6; Pl.'s L.R. 56.1(b)(3)(B) ¶ 15.)

The vehicle, an unmarked Hazel Crest squad car, was operated by Viduna with Bush as a passenger. (Pl.'s L.R. 56.1(b)(3)(B) Stmt. ¶ 16.) Both officers were not in police uniform. (*Id.* ¶ 19.) After Viduna pulled alongside Taylor, Bush instructed Taylor to pull her car over to the side of the road. (Defs.' L.R. 56.1(a) Stmt. ¶¶ 6-7.) Though it is undisputed that Taylor did not pull over immediately, there appears to be some dispute as to the content of Taylor's response to Bush's instruction as well as whether the officers identified themselves as such. (Pl.'s L.R. 56.1(b)(3)(B) Stmt. ¶ 19.) Taylor contends that Viduna and Bush did not identify themselves as police officers, adding that after numerous demands to pull over, she stated: "I'm going to 159th where it is well lit." (*Id.* ¶ 18.) However, Defendants contend that after informing Taylor that they were police officers, instructing her to pull over, she responded to the extent that she did not have to stop and that she knew her rights. (Defs.' Reply Pl.'s L.R. 56.1(b)(3)(B) Stmt. ¶ 17.) Regardless of the version of the story, it is undisputed that Taylor traveled approximately five blocks from the time she noticed the emergency lights flashing from Viduna and Bush's squad car until she ultimately stopped her car. (Defs.' L.R. 56.1(a) Stmt. ¶ 8.)

Again, the parties dispute the version of events occurring once Taylor pulled over. Taylor contends that the Defendants pulled in front of her car, such that she was forced to stop. (Pl.'s L.R. 56.1(b)(3)(B) Stmt. ¶ 27.) Once stopped, the Defendants "immediately jumped out of the[ir] vehicle," screamed at her and ordered her to get out of her car. (*Id.* ¶ 28.) After exiting, she complied with their order and moved to the back of her vehicle. Once at the rear of her car, Bush and Viduna asked her for her driver's license, she informed them that it was in her purse in the car and they entered her car, retrieving the license. (*Id.* ¶¶ 32-33.)

Defendants contend that instead of cutting Taylor off, Viduna pulled their car behind Taylor after she finally stopped her vehicle. (Def.'s Reply Pl.'s L.R. 56.1(b)(3)(B) Stmt. ¶ 27.) When Viduna asked her for her driver's license, Taylor replied by stating that she did not have to turn it over, and Viduna asked Taylor to step out of her car. In response, Defendants contend Taylor argued that she did not have to exit, but concede that she ultimately complied with the request. (*Id.* ¶ 30.) Defendants also contend that they only obtained her driver's license after Viduna retrieved it from her purse and did an inventory search. (*Id.* ¶ 32.)

Without dispute, however, the parties agree that shortly after Taylor moved to the back of her car, a marked squad car arrived, driven by a uniformed officer. (Pl.'s L.R. 56.1(b)(3)(B) Stmt. ¶ 31.) The officers arrested Taylor, placed her in a squad car and took her to Hazel Crest's police station. Therein, she was issued two traffic tickets, one for improper lane usage, the other for failing to yield to an emergency vehicle, violations of sections 625 ILL. COMP. STAT. 5/11-709 and 625 ILL. COMP. STAT. 5/11-907(1) of the Illinois Vehicle Code respectively. Further, Taylor was charged with a misdemeanor offense, namely "Obstructing a Peace Officer" in violation of 720 ILL. COMP.

STAT. 5/31-1. (Defs.' L.R. 56.1(a) Stmt. ¶ 10; Pl.'s L.R. 56.1(b)(3)(B) Stmt. ¶ 35.) Later that evening, Taylor was released on a personal recognizance bond. (Defs.' L.R. 56.1(a) Stmt. ¶ 11.)

Prior to trial, prosecutors dismissed the charge against Taylor for failing to yield to an emergency vehicle, see Pl.'s L.R. 56.1(b)(3)(B) Stmt. ¶ 38, and proceeded to trial on the improper lane usage and the obstruction charges. (Defs.' L.R. 56.1(a) Stmt. ¶ 12.) Ultimately, Smith prevailed on the obstruction charge but was found guilty of the lane usage charge. (*Id.* ¶ 13.) Shortly thereafter, on May 13, 2004, Taylor timely filed a five-count complaint, alleging various violations of federal and state law by Defendants. Under federal law, Taylor contends that Bush and Viduna unlawfully seized her in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution, also asserting a malicious prosecution claim. (Compl. at Count I & Count V.) Under state law, Taylor asserts claims of false arrest, false imprisonment and malicious prosecution. (Compl. at Count II-Count IV.) On June 23, 2005, Defendants moved for summary judgment. With this background in mind, the Court turns to the issues.

## Standard of Review

Rule 56 imposes the burden of establishing the lack of a genuine issue of material fact necessitating trial. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). At this stage, courts does not weigh evidence or determine the truth of matters asserted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Instead, courts must consider the evidentiary record in the light most favorable to the non-moving party and draw all reasonable inferences in [his or her] favor as well. *Ezel v. Potter,* 400 F.3d 1041, 1046 (7th Cir. 2005) (citation omitted). Thus, to avoid summary judgment, Taylor "must produce more than a scintilla of evidence to support [her] position" that a genuine issue of material fact exists. *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625

-4-

(7th Cir. 2001) (citation omitted). Put more colorfully, "[s]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Nevertheless, if Taylor, as the non-moving party, fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law. *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir.2002) (citing *Celotex Corp.*, 477 U.S. at 323).

## Analysis

In support of summary judgment, Defendants contend that probable cause to arrest existed such as to bar all of Taylor's claims. (Defs.' L.R. 56.1(a)(2) ¶¶ 4-5.) Indeed, Defendants' decision to argue that probable cause existed for Taylor's arrest is strategically sound as its existence would prevent Taylor from moving forward on all of her claims. As one court noted, the Seventh Circuit "is quite clear that 'the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest [and] malicious prosecution.'" *Jiminez v. Herrera*, No. 95 C 1956, 1996 WL 99715, at *3 (N.D. Ill. Mar. 4, 1996) (quoting *Fernandez v. Perez*, 937 F.2d 368, 371 (7th Cir. 1991)). Moreover, as another court noted, "the existence of probable cause [also] precludes the common law actions of false arrest and imprisonment and malicious prosecution." *Carlson v. Bell*, No. 04 C 8201, 2005 WL 3116051, at *3 (N.D. Ill. Nov. 22, 2005) (citing *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1350 (1997); *Johnson v. Target Stores*, 791 N.E.2d 1206 (Ill. App. Ct. 2003)).

Taylor avers that no probable cause existed for the specific charge Defendants cited as their reason for arresting her, namely the obstruction charge. (Pl.'s L.R. 56.1(b)(2) at 6.) She contends

-5-

"because [her] claims of false arrest and false imprisonment are based upon her being taken into custody, defendants' probable cause analysis must focus on the charge of obstructing a police officer," which "was based on defendant's allegation that plaintiff repeatedly refused to produce her driver's license." (*Id.*) Furthermore, she attempts to bring in the officers' subjective intent as to why she was arrested, contending that because they "became enraged" when she did not stop her car as instructed, "they determined that writing a single traffic ticket for improper lane usage was not sufficient," retaliating by issuing a second ticket for failing to yield to an emergency vehicle and charging her with obstructing a peace officer. (*Id.* at 5.) As evidence of this intent, Taylor points out that "[b]oth officers testified that had plaintiff not been charged with Obstructing [a Peace Officer], she would simply have been given a ticket for Improper Lane Usage and would not have been taken into custody." (*Id.*) *See also* Bush Dep. at 77-8; Viduna Dep. at 99-100. However, while Taylor contends that the "probable cause analysis *must* focus on the charge of obstructing a police officer," her suggested approach is contrary to the law this Court must follow.

In *Devenpeck v. Alford*, 543 U.S. 146 (2004), the United States Supreme Court considered this issue and determined that the focus need not be limited to probable cause on the charge the individual was ultimately arrested on nor even limited to a crime that was "closely related" to the ultimate charge. *Id.* at 152-54. In *Devenpeck*, Jerome Alford was pulled over on the suspicion that he was impersonating a police officer, illegal under Washington state law. *Id.* at 149. During the stop and questioning, Devenpeck noticed that Alford was recording their conversation. *Id.* As a result, Devenpeck informed Alford that he was being placed under arrest, not for impersonating a police officer, but for violating the Washington Privacy Act, which prohibits recording conversations under certain situations. *Id.*

The Court held that such an arrest can be constitutionally proper. Thus, it reversed and remanded for the lower court to determine whether probable cause existed to arrest Alford on the impersonation of a police officer charge. *Id.* at 148. In doing so, the Court reiterated that "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that *a* criminal offense has been or is being committed." *Id.* (citing *United States v. Watson*, 423 U.S. 411, 417-24 (1976); *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)) (emphasis added). Citing *Whren v. United States*, 517 U.S. 806 (1996), the Court wrote "that an arresting officer's state of mind (except for the facts he knows) is irrelevant to the existence of probable cause" adding that the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.* at 153. As a result, the Court held that "[t]he rule that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest" was inconsistent with the Court's precedent which eliminated subjective intent of the officer as an avenue for invalidating an arrest. *Id.* at 154.[1]

---

[1] The Seventh Circuit's explanation of the "closely related" to rule provided that probable cause need not have existed for the charge for which the plaintiff was arrested, so long as probable cause existed on a closely related charge." *Biddle v. Martin*, 992 F.2d 673, 676 (7th Cir. 1993). A charge would be "closely related" if it could "reasonably be based on the same set of facts that gave rise to the arrest and that the charge offered as justification [was] one that would have recommended itself to a reasonable police officer acting in good faith at the time the arrest was made." *Williams v. Jaglowski*, 269 F.3d 778, 783 (7th Cir. 2001) (internal quotation and alteration omitted). Thus, in holding that the an arrest is constitutionally proper, even if it is not "closely related" to the charged offense, the *Devenpeck* Court abrogated such case law, expanding the rights of officers to arrest, even where the officer does not know exactly the reason for their arrest. *See* Paul M. Rashkind, *Mid-Term: Pace Accelerates*, 20 CRIM. JUST. 53, 54 (2005).

In the present case, even if Bush and Viduna lacked probable cause to arrest Taylor on the *obstruction* charge, Taylor's claim of false arrest under Section 1983 fails because she cannot avoid the fact that there was probable cause to arrest her on the *improper lane change* charge. This result is consistent with *Devenpeck*, which instructs that where an arrest has occurred, that arrest is constitutionally proper so long as there was probable cause to arrest for any offense the arresting officer possessed knowledge of, *even if* that offense was not (1) the reason offered at the time of the arrest, or (2) "closely related" to the cited reason. *Id.* at 148-53. Furthermore, in this case, the issue of whether probable cause existed to charge Taylor for another offense, *i.e.,* making an improper lane change, has already been decided by a jury, who found Taylor guilty of that charge.[2] *See United States v. Mechanik*, 475 U.S. 66, 67 (1986) (finding that a "verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted").

To the extent Taylor challenges Defendants' ability to place her under arrest for violating traffic laws, that argument is a non-starter. (*See* Pl's L.R. 56.1(b)(2) at 7-8 (contending that "Defendants' citation to *Atwater v. City of Lago Vista*, 532 U.S. 318 . . . (2001) and *Ricci v. Arlington Heights,* 116 F.3d 288 (7th Cir 1997) do not help them.")). Consistent with the U.S. Supreme Court's interpretation of the Fourth Amendment, Illinois permits a full custodial arrest for any crime on probable cause. *See* 750 ILL. COMP. STAT. 60/301(a) ("Any law enforcement officer may make an arrest without warrant if the officer has probable cause to believe that the person has committed or is committing any crime . . . even if the crime was not committed in the presence of

---

[2]Indeed, in *Devenpeck*, it does not appear that the charges against Alford ever made it to a jury as the state trial court dismissed all charges pending against him. *Devenpeck*, 543 U.S. at 151.

the officer."). *Cf. Devenpeck*, 543 U.S. at 153 ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.") (citing *Watson*, 423 U.S. at 417-24; *Brinegar*, 338 U.S. at 175-76) . And, Illinois courts have endorsed arrests made for improper lane changes, so long as probable cause existed. *See People v. Kleutgen*, 833 N.E.2d 416, 418-19 (Ill. App. Ct. 2005) (noting that "[t]he parties did not dispute that [the arresting officer] saw defendant's car veering in and out of its lane before he arrested her. This gave [the arresting officer] probable case to believe the driver was committing improper lane use, an offense under the Vehicle Code."). *See also id.* (citing *People v. Smith*, 665 N.E.2d 1215 (Ill. 1996), for its proposition that "an officer's seeing the defendant's vehicle cross a lane marking gave him probable cause for an arrest for improper lane use"). Thus, with probable cause, an arrest for an improper lane change would be in accord with Illinois law. Accordingly, the Court must grant summary judgment on Count I of Taylor's complaint.

In addition to granting summary judgment on Count I, the Court also dismisses Taylor's other federal count, Count V, which alleges malicious prosecution in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution. "Because Illinois allows a common law cause of action for malicious prosecution, a federal claim is prohibited." *Mut. Med. Plans, Inc., v. County of Peoria*, 309 F. Supp. 2d 1067, 1078 (C.D. Ill. 2004) (citing *Newsome v. McCabe,* 256 F.3d 747, 751 (7th Cir. 2001); *Gauger v. Hendle*, 349 F.3d 684, 692 (7th Cir. 2001)). Indeed, Taylor concedes that she "cannot maintain a federal claim for malicious prosecution unless state law fails to provide such a remedy." (Pl.'s L.R. 56.1(b)(2) at 8.) Having dismissed all claims based in federal law, the Court relinquishes jurisdiction over Taylor's remaining state law counts rather than resolve them on the merits. *See* 28 U.S.C. § 1367(c)(3) (noting that federal courts may decline to exercise

supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction").

## Conclusion

For the reasons provided above, the Court grants Defendants' motion for summary judgment on Count I. Moreover, because Illinois law permits actions for malicious prosecution, the Court dismisses Count V. Accordingly, Counts I and V are dismissed with prejudice. Finally, the Court declines to exercise supplemental jurisdiction over Taylor's state law claims, thus, Counts II, III and IV are hereby dismissed without prejudice. The Court directs the Clerk of the Court to enter judgment accordingly.

**SO ORDERED:**

Date: **MAR 3 0 2006**

Hon. Maria Valdez
United States Magistrate Judge